UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Alexander von Brandenfels, <br> Plaintiff, <br><br> v. <br><br> Genz-Ryan Plumbing and Heating Co., <br> Defendant. | Case No.: <br><br> 26-cv-1560-DWF/DTS <br><br> Demand for jury trial: No |

RECEIVED FEB 2 0 2026 CLERK, U.S. DISTRICT COURT MINNEAPOLIS, MINNESOTA

# COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF UNDER THE TELEPHONE CONSUMER PROTECTION ACT

## INTRODUCTION

1. Plaintiff alleges the following upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

## JURISDICTION AND VENUE

2. The Court has jurisdiction over the Telephone Consumer Protection Act claims under 28 U.S.C. §1331 because this complaint arises under laws of the United States.

Complaint: Brandenfels v. Genz-Ryan

SCANNED FEB 2 0 2026 U.S. DISTRICT COURT MPLS

1

3. Venue is proper because Defendant does business in and solicits customers in this district, and because a substantial part of the events giving rise to these claims occurred here.

## PARTIES

4. Alex von Brandenfels is a natural person and resident of Minneapolis, Minnesota.

5. Genz-Ryan Plumbing and Heating Co. ("Genz-Ryan") is a Minnesota corporation operating as a plumbing and HVAC contractor in the Twin Cities metro area. Its principal place of business is 2200 Highway 13 W, Burnsville, Minnesota 55337.

## THE TELEPHONE CONSUMER PROTECTION ACT (TCPA) AND RELATED REGULATIONS AND CASE LAW

6. The TCPA, 47 U.S.C. § 227 *et seq.* (1991), is a law regulating telemarketing and the use of auto-dialing technology. It was enacted in response to increasing abuse of consumers' telephone systems by businesses.

7. 47 U.S.C. § 227 (c) prescribes that the Federal Communications Commission (FCC) shall issue regulations implementing the TCPA, and

gives the FCC the power to establish a national database of "telephone numbers of residential subscribers who object to receiving telephone solicitations".

8. The "National Do Not Call Registry" (www.donotcall.gov) is the FCC's database of residential phone numbers who object to receiving telephone solicitations, as authorized by the above statute.

9. 47 CFR § 64.1200 ("Restrictions on Telemarketing, Telephone Solicitation, and Facsimile Advertising - Delivery Restrictions", 2003), is a set of FCC regulations implementing the TCPA, as authorized by the above statute.

10. 47 CFR 64.1200 (c)(2) forbids making telephone solicitations to residential phone subscribers who have listed their number on the National Do Not Call Registry.

11. 47 CFR 64.1200 (e) causes 47 CFR 64.1200 (c)(2) to also apply to cell phones, and not just residential landlines.

12. 47 U.S.C. § 227 (c)(5) grants a private right of action to those who receive telephone calls in violation of the FCC regulations authorized under subsection (c). Such a person is entitled to $500 in damages per violation,

Complaint: Brandenfels v. Genz-Ryan                                                    3

and these damages may be increased by up to 3 times, at the Court's discretion, if the defendant acted "knowing[ly] or willful[ly]" in violation of the law. Such a person may at the same time also request injunctive relief against future violations.

13. The FCC has declared that restrictions on placing "calls" to phones also apply to sending text messages. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 18 FCC Rcd 14014, 14115, para. 165 (2003).

**FACTUAL ALLEGATIONS: DEFENDANT'S TEXTS TO PLAINTIFF**

14. On April 26, 2024, Defendant sent Plaintiff a text message (the "April 26 Message") at his personal cell phone number ending in 2205, reading:

> Hello, this is Brittany from Genz-Ryan reaching out with an exclusive offer! We're here to make sure you're ready for all seasons, so for our valued customers, we have a Furnace and AC tune-up for just $29! We have technicians available in your neighborhood next week, so respond here or call us at 952-767-1000 to reserve your spot now!

15. The April 26 message didn't list a method to opt out of telemarketing.

Complaint: Brandenfels v. Genz-Ryan                                            4

16. Nevertheless, on April 26, Plaintiff replied to the April 26 message with "STOP" and "unsubscribe".

17. On March 3, 2025, Defendant sent Plaintiff two text messages at his personal cell phone number ending in 2205 (the "March 3 Messages").

18. The first of the March 3 Messages read:

> Hey Alex, it's Loren from Genz-Ryan. I'm in your area this week and have reserved a few spots for a $29 furnace check-up to fine-tune your system for the season. Want me to set you up? Just reply 'YES' or call us at (952) 592-3818.
>
> Reply END to stop texts.

19. The second of the March 3 Messages read:

> Oops! it's Loren again form Genz-Ryan, sorry for the mix-up - I sent you the wrong details earlier. The real deal is a BOGO, both a Furnace and AC tune-up for only $29!
>
> Reply "YES" or call (952) 592-3818 if you'd like to grab one of the remaining slots, as I'm wrapping up my visits in your area soon."

20. When sending the March 3 Messages, Defendant did so despite knowing that Plaintiff had attempted to opt out April 26.

21. On January 12, 2026, Defendant sent Plaintiff a text message (the "January 12 Message") at his personal cell phone number ending in 2205, reading:

> Hi Alex von Brandenfels, this is Sarah from Genz-Ryan! to kick off the new year, we're offering $26 maintenance specials. Including a $26 furnace tune-up and a $26 BOGO water heater flush & fill with a softener tune-up. We are in your area right now and send someone over within the hours.
>
> These are the options that i have for you, select one, lock the price in today for maybe another day to:
>
> 1. 1: Tuesday, January 13, 2026
>
> 2. 2: Wednesday, January 14, 2026
>
> 3. 3: Thursday, January 15, 2026
>
> Reply 1,2,3 and also mention (furnace or water heater) or call 952-208-6115 and ill pencil you in before the price changes.

Reply STOP to opt out of messages.

22. When sending the January 12 Message, Defendant did so despite knowing that Plaintiff had attempted to opt out April 26.

23. The April 26 Message, the March 3 Messages, and the January 12 Message ("the Messages") are all promotional in nature, intended to induce Plaintiff to pay for Defendant's services.

24. While Plaintiff did previously have Genz-Ryan send a technician to his property in 2023 to provide a quote for air conditioner installation, Plaintiff never consented to receive any promotional calls or text messages from Defendant unrelated to that service request.

25. None of the Messages relate to Plaintiff's 2023 request for service.

26. Plaintiff's phone number ending in 2205, at which he received the text messages at issue, has been registered in the National Do Not Call Registry since July 29, 2016.

27. At the times each of the Messages was sent, Plaintiff and Defendant didn't have an established business relationship, as defined by 47 CFR § 64.1200 (f)(5), because Plaintiff never made any purchases from Defendant, and

hadn't made any inquiry about Defendant's products or services within the three months preceding the texts.

28. In sending the unsolicited Messages to Plaintiff, Defendant disrupted Plaintiff's privacy and annoyed him.

29. By telemarketing several times to Plaintiff, *multiple years* after his 2023 request for an air conditioner installation quote, for services unrelated to his 2023 request, even *after* his request to opt out of telemarketing, Defendants are engaged in exactly the kind of obnoxious telemarketing behavior that the Telephone Consumer Protection Act and the National Do Not Call Registry were enacted to stop.

## FACTUAL ALLEGATIONS: DEFENDANTS' KNOWING OR WILLFUL ACTIONS

30. Prior to April 26, 2024, Defendants were aware of the existence of the Telephone Consumer Protection Act and/or the National Do Not Call Registry.

31. In 2020, 241 million Americans had their phone numbers registered on the National Do Not Call Registry, representing 73% of the US population.

32. The existence of the National Do Not Call Registry is common knowledge.

33. Prior to April 26, 2024, at least one executive of Genz-Ryan, or at least one person holding a management position there whose responsibilities include sales or marketing, placed their phone number on the National Do Not Call Registry, thereby demonstrating an awareness of its existence.

34. Defendant does not subscribe to the National Do Not Call Registry.

35. Defendant makes no attempts to avoid sending marketing text messages to phone numbers on the National Do Not Call Registry.

36. Defendant does not train its employees not to send marketing texts to phone numbers on the National Do Not Call Registry.

37. Defendant maintains a record of its customers and prospective customers in a customer relationship management system (or "CRM").

38. Defendant doesn't maintain a centralized mechanism by which people may consent to receive marketing calls or text messages.

39. Rather, Defendant's practice is to send marketing text messages indiscriminately to people whose phone numbers are saved in Defendant's CRM.

40. Defendant doesn't maintain a system by which people may opt out of receiving marketing text messages from Defendant.

41. Alternatively to the above paragraph: To the extent that Defendant maintains systems with the ability for people to opt out of marketing text messages, those systems are not centralized: If for example a person opts out by replying "STOP" to one system, it doesn't have the effect of stopping Defendant from sending that person future marketing messages via another system.

42. During the period in which Defendant sent Plaintiff the Messages, Defendant didn't maintain a written policy, available upon demand, for maintaining a do-not-call list.

43. Between January 14 and 16, 2026, Plaintiff had a back and forth email conversation with attorney Sam Meshbesher, counsel for Defendant in this matter.

44. On January 16, Plaintiff sent an email to Mr. Meshbesher, stating: "your clients violated 47 CFR § 64.1200 (d) by failing to maintain a 'written policy, available upon demand, for maintaining a do-not-call list.' (Incidentally, if I'm wrong and it does exist, I'm now demanding a copy of it.)".

45. Mr. Mesheber never complied with Plaintiff's request for such a written policy, nor has Defendant provided Plaintiff with a copy of such a written policy.

46. On February 18, Plaintiff emailed Mr. Mesheber a courtesy draft copy of this complaint, stating his imminent intent to file it in court. In this email, Plaintiff also noted that he had never received a copy of a written do-not-call policy in response to his previous email, and that this would make it easy to establish liability under 47 CFR § 64.1200 (d).

47. On February 19, in response to Plaintiff's email from the previous day, Mr. Mesheber stated that "demanding to see a policy which has its own easily accessible page on Genz-Ryan's website is frivolous". In this email, Mr. Mesheber did not provide a link.

48. Defendant's website doesn't contain a written policy for maintaining a do-not-call list.

49. On February 19, when Plaintiff followed up to request a link to the page Mr. Mesheber was referring to on Defendant's website, Mr. Mesheber responded with a link to Defendant's Privacy Policy located at https://genzryan.com/privacy-policy/

50. Defendant's Privacy Policy is not a policy for maintaining a "do-not-call" list of persons who request not to receive calls or texts from Defendant.

51. Defendant's Privacy Policy contains zero instances of the word "call".

52. Defendant's Privacy Policy contains only one instance of the word "list", and it's in reference to a "text-messaging list" of people who have opted *in* to *receive* text messages from Defendant.

53. Defendant's Privacy Policy contains no reference to the maintenance of, nor existence of, any list of people who have requested *not* to receive texts or calls from Defendant.

54. Since Defendant never provided Plaintiff with a copy of a written do-not-call policy after his demand, Defendant doesn't have such a policy "available upon demand".

55. During the period in which Defendant sent Plaintiff the Messages, Defendant didn't consistently train its personnel engaged in telemarketing in the existence and use of a do-not-call list.

56. During the period in which Defendant sent Plaintiff the Messages, Defendant failed to maintain a do-not-call list of subscribers who requested not to receive telemarketing from Defendant; or alternatively, if it did maintain such a list, it failed to reliably place subscribers on that list at the time when they made such a request.

57. When sending each of the Messages to Plaintiff, Defendant was aware that Plaintiff had not consented to receive the message.

58. Defendant willfully sent the Messages to Plaintiff, without confirming whether Plaintiff's phone number was on the National Do Not Call Registry, and despite Defendant's awareness of the existence of that Registry, and

despite Defendant's knowledge that Plaintiff had not consented to receive marketing messages.

59. When sending each of the Messages to Plaintiff, Defendant was aware that Plaintiff hadn't purchased any product or service from Defendant within the previous 18 months, and Defendant was aware that Plaintiff hadn't made any inquiry regarding Defendant's products or services within the previous 3 months.

60. When sending each of the Messages to Plaintiff, Defendant knew that it had not instituted adequate procedures for maintaining a list of persons who request not to receive telemarketing from Defendant.

61. Defendant knowingly sent the March 3 Messages and the January 12 Message to Plaintiff in spite of his attempts to opt out on April 26, 2024.

## COUNT 1: VIOLATIONS OF 47 CFR 64.1200

62. Plaintiff incorporates by reference all of the paragraphs in the above "FACTUAL ALLEGATIONS" sections as though fully stated herein.

63. The above-alleged Messages by Defendant each violated 47 CFR 64.1200 (c)(2), because the messages were intended to encourage the purchase of

Defendant's services, were sent without Plaintiff's consent, and Plaintiff's phone number is on the Do Not Call Registry.

64. The above-alleged Messages by Defendant each violated 47 CFR 64.1200 (d), because:

    a. Defendant failed to maintain a written do-not-call list policy available upon demand, as specified by 47 CFR 64.1200 (d)(1),

    b. Defendant failed to provide do-not-call list training to telemarketing personnel as specified by 47 CFR 64.1200 (d)(2),

    c. Defendant failed to record phone subscribers in a do-not-call list when requested, or failed to do so "at the time the request [was] made", in violation of 47 CFR 64.1200 (d)(3),

    d. and/or Defendant failed to maintain a do-not-call list, in violation of 47 CFR 64.1200 (d)(4).

65. Because each of the Messages violated one or more of the "regulations prescribed under [47 U.S.C. § 227 (c)]", Plaintiff is entitled under 47 U.S.C. § 227 (c)(5) to $500 from Defendant for each violation, for a total of $2,000.

Complaint: Brandenfels v. Genz-Ryan                                                                 15

66. Defendant's actions should be considered "knowing" or "willful" for the purposes of 47 U.S.C. § 227 (c)(5), and thus the damages should be trebled by the court, to $6,000.

## REQUEST FOR RELIEF

67. Plaintiff seeks the above trebled statutory damages of $6,000.

68. Pursuant to 47 U.S.C. § 227 (c)(5), Plaintiff also seeks an injunction prohibiting Defendant or its agents from initiating any telemarketing to Plaintiff's cell phone in the future.

69. Plaintiff seeks reimbursement by Defendants for any costs incurred in the process of filing and litigating this complaint.

70. Plaintiff seeks any additional remedies the Court deems just and reasonable.

Date: 2/20/26

Alexander von Brandenfels

415 Oak Grove St, Apt 500, Minneapolis, MN, 55403
Tel.: (612) 405-8389
Email: alex.brandenfels@gmail.com